Mr. Albert, you have three minutes reserved for rebuttal, when you're ready you may proceed. Yes, good morning. If it pleases the court, my name is Peter Albert, and I am the attorney for the appellants in this matter. It should be noted that my colleague Rory Bellantoni was scheduled to argue this matter this morning, however over the past week he came down with a very bad case of COVID. I tried to file the notice of appearance, so I'm not sure it was done correctly, so I apologize for any kind of procedural irregularities in that respect. You may proceed, counsel. Thank you. And well wishes to your colleague. Thank you. In connection with this case, I think the briefs somewhat speak for themselves. There's really not factual issues. I know the court issued an order this past, or actually last week, February 7th, requesting counsel address three particular issues. So I may jump to that rather than go through the facts and the basic law, which you can read in the briefs. With respect to mootness, it's respectfully suggested that this case is not moot. This case is an ongoing controversy for which relief can be granted to the five parents. This court could issue an order directing the DOE to comply with the pendency orders. This court could remand the matter back to the district court for further proceedings. Or this court could issue an order remanding the matter back to district court to fashion an appropriate remedy. Have the sums that were at issue when you were in front of Judge Viscoso, have they been paid? Partly yes, partly no. As of yesterday, I consulted with an individual at the school where these students attend. And there's still significant amounts outstanding. I can give you those amounts for the- That's hardly before the court. It's an important answer. But we can't come back to you every week while we're working this out and say, gee, how much is it now? I understand that, and I appreciate that. Let me ask you, shifting from mootness to ripeness. And I think this, in my head, it is a little bit factual. At least I need to understand how pendency orders work. Because you have a pendency order for this school year. It was paid up, at least as of our last briefing, through March. And so what remains is March through the end of the academic term, right? For tuition for some of the students- And transportation. Transportation going back a little bit further. I want to say to at least the September or October. And I understand arguments that this won't happen. But if the administrative matter were to resolve tomorrow against your clients, the money from March to the end of the term, are you entitled to that money? Well, the appellants would argue, yes, under pendency. The theory of pendency is not that this should be done, as Judge Satz said, as a kind of a pay as you go. Pendency is supposed to be a payment to maintain the student's placement for the duration of the litigation. If that litigation- And that's my question. Are you entitled to funds for a remaining part of the school year after the pendency ends, after it's no longer pending? The answer to that would be no, because pendency, again, is an interim relief. It's not ultimate relief. The ultimate relief is, again, whether or not the DOE provided an appropriate program, whether the parent's placement is appropriate, and whether the equities favor one side or another or favor the parent's claim. So if it were to stop pending tomorrow, you'd effectively be seeking funds for what you're not entitled. Fair? I mean, now you're seeking funds through the end of the school year, but we don't know how long the matter will be pending. That's the rightmost question in my head. Well, the answer to that is technically yes, but the fact of the matter is these cases, I believe four of the five cases, haven't completed the administrative due process hearing. One case, there was a, it's called an FOFD, a Findings of Fact and Decision, which is a final determination rendered by an impartial hearing officer. That's now on appeal to the New York State Education Department, something called the Office of State Review. You'd probably be entitled to it, but you're not, as we sit here, entitled to it. I can't tell this court, yes, we're entitled from A to Z through the end of the year, because lightning could strike, the process could be completed promptly and in compliance with federal and state law, I might add, but that doesn't happen as a practical matter. So as a practical matter, the parents are entitled to pendency to cover the duration of the litigation, and that would include appeals. Has any minor child's plaintiff been taken out of their current educational placement? The answer to that is no, but the appellants would argue that that's really a red herring. That was my red herring question. Well, the issue is a red herring, the question is a valid question. I think with respect to the issue of does there have to be imminent harm, I think the Supreme Court has ruled on this back in the Honig case in 1988, where pendency, where harm is presumed when there's an issue of a violation of pendency. Well, but you answered my question about the likelihood of this pending through the school year with practical terms. It's a practical answer. Is there some, might the moon be made of cheese, but everybody knows what's going to happen. I suppose same question here, just practically speaking, are any of these plaintiffs at risk of losing their placement? I think as a practical matter, the answer is yes. There's an enrollment agreement that parents executed on behalf of their student with the school. Tuition is held in abeyance in a generic sense if the parent is bringing a claim against the DOE under the IDA and New York State education law. Once that litigation is completed, then the obligation, if the parent were to lose that case and ultimately lose every subsequent appeal, then they are ultimately responsible for that amount. The DOE... Well, are you going to lose the appeal? I mean, are they at risk in your view? As a legal matter, the answer is yes. Has the school... Is the school going to take it out this term? At this time, the school hasn't issued a letter that says pay up because the obligation, to use your word, hasn't ripened yet because the case is still within the administrative process. One of the cases for the student YM, there was a decision by the impartial hearing officer back at the end of December, and that's now on appeal before the state education department. Those appeals typically take 60 to 90 days to resolve. If there's an adverse decision, then the IDA gives the parent or an aggrieved party the absolute right to go into state court or federal court and seek an appeal of that case. Those cases are typically resolved through summary judgment because there's no factual issues. There's an administrative record, and that goes before the district court. Summary judgment motions take anywhere from a few months to as much as a year. So these cases, I hate to say, tend to drag on because of the process. Is there anything we would look to in the pleadings here that, if we assume them to be true, would establish that the placements of these individuals for this school term is at risk? What paragraphs of the complaint would we find out? I would have to review the complaint paragraph by paragraph to see which paragraph points that out. But clearly, the underlying facts of the cases, when the student enrolls in a private school, they're not going there for free. It's a private school. When the parent, to allow the student to enroll in that school, they execute an enrollment agreement. In the event that they don't pay, or the process in which the parent is seeking public funding, because the district, in this case, the DOE of New York City, has not complied with their legal obligations to provide a free, appropriate public education, then the parent is on the hook. But so, under the enrollment agreement, I don't think, is the enrollment agreement attached to the complaint? I don't think so. I don't believe so, but I would be willing to- Well, but I just want to- To submit it on a FRAP letter as an attachment, if that's appropriate. We'll let you know. Okay. But your representation is the parent's obligation to pay doesn't even begin in these cases until the administrative process is complete. Is that what you're saying? Not exactly, Your Honor. Their obligation begins when they execute an enrollment agreement. They're now bound to pay tuition at some point in time in the event that their legal challenge is not successful. The same would hold- And that time under the agreement isn't until the administrative process is complete? Essentially, yes. And the same would hold true for transportation. Again, students need transportation to get from their home to the private school. Most of the students who attend iBrain and our clients are non-mobile. They're not walking to school. Most of them rely and use wheelchairs or other mobility devices. When the parent decides to enroll their student in the iBrain school, they also will execute a transportation agreement. That transportation agreement is with a private provider who agrees to provide transportation to and from the school for that student. Can I ask you, Counsel, there's a summary order that's very similar, your firm as well, and iBrain as well. The Abrams case. Yes. It's not binding, but is there any basis to distinguish that decision from this case? In this case, there's very little to distinguish it. However, in these cases and in each of these cases, there are pendency orders. I believe there's three. Three of the students have pendency orders. And what I mean is an order that was rendered by the trial level impartial hearing officer that says, based on the filing of the administrative due process complaint, pendency is automatically triggered. If the other side, in this case the DOE, had the opportunity to contest that or not, and if they don't or even if they do contest it, then the impartial hearing officer renders a decision as to what is the pendency placement. And likewise, what is the obligation of the school district to pay for that? Because, again, that's what pendency is. That was the congressional thought process in issuing Section 1415J of the IDEA. The issue was to maintain the student's program and placement while the grown-ups kind of fight it out. Because it was seen as an unfair that somehow the school district might make a change to that student, simply because the parent disagreed with a recommendation made by the DOE. And, at least for me, one final question. There's another comparable decision from the district court in the Eastern District Judge Committee. And he makes a point about who the proper defendant is to sue, which is not sued here. And basically the contention is, once the school says pay, we've decided to pay, which we have here. No question about that. Then it goes to the, I can't remember- I think it's the comptroller. It's the comptroller. I believe. And you haven't sued. And that's the entity that's processing the payment. It's all that's left to do. And you haven't sued them. So what's the theory that any of the defendants here can provide you the relief you're looking for? Our position is that it's the school district, or under the IDA parlance, the local educational agency, that bears the responsibility to make the recommendations for the disabled student, to identify what the pendency placement is, and to pay for that during the litigation, so to speak. And you've prevailed in every way with them. You just haven't gotten the check cut yet. I mean, you've gotten the check cut through, actually, beyond where we are today. You just haven't gotten the check cut for the rest of the school year. I'm not sure we would have, I don't know if standing is the right word, but I'm not sure, and with all due respect to that district court opinion, I'm not sure that that's the appropriate defendant. Again, the obligation is the Department of Education, not who might be executing the check. It's not the mayor. It's not anybody else. It's the Department of Education, as well as the chancellor of the Department of Education. Thank you, counsel. All right. Thank you. We'll hear from Mr. DeSilvio. You may proceed. Good morning. May it please the court, Lorenzo DeSilvio on behalf of the New York City Department of Education. With the panel's permission, I'd like to start with where things are on the ground. The record reflects that as of the 28th of October last year, plaintiffs got tuition through December. They had transportation costs for July, August, and September at that point in time paid in full. In the second full week in December, I spoke with my client. Were there transportation costs in July and August? I believe the school year does run in July and August, so they may be attending certain facilities to get services, whether at Eyebring or another place, but I'm not sure based on any of the five students here or the record in this case. So in December, October, transportation costs went out, and in January last month, tuition through March went out and transportation costs were November and December. I'm not sure whether they've been sent out or whether they've been received yet, but they should be in process. So that's where things are as of today, according to my client. Turning next to the disability questions, I think the department agrees that there is a ripeness issue to the extent that counsel has just acknowledged that parents, none of the plaintiffs here are left holding the bag to use a colloquialism unless and until the administrative process has run. So I think that gets at your concern, Judge Nathan, about ripeness and about the point in time when there's any aggrievement to either the parents or any of the students. I think counsel candidly answered this just to make sure you agree. The pendency order, although it's for the year, the obligation to pay is just during pendency, right? That's correct. So if it were to end tomorrow, and again, counsel I think answered this candidly, there wouldn't be an obligation to pay any day going forward were they not to prevail if it came to a complete termination of the administrative process against plaintiffs. My understanding is either we would prevail and there's no payments owed at any point going forward, or the parent might prevail and then they stop being pendency payments and they turn into a different type of payment, but the pendency issue and the state put provision just stops being at play at all. So maybe that gets at mootness. And then in terms of redressability, I think it gets at ripeness. I think more than mootness, but. I defer to you. I think there's different ways to think about disability as interrelated, but I'm going back to my Fed course class. Yeah, me too. In terms of redressability, I think if plaintiff's argument is DOE is taking too long, that's redressable. But if their argument is we want money in our hands today, the fact that they're only going after DOE, that presents a fundamental problem for them. But turning to the merits and the factual situation here, the problem with plaintiff's argument is that atmospherically they seem to be saying, well, these kids had penancy in Ibram the year before. Why aren't you just paying from July the 6th? But that gets the fact that penancy is pending the resolution of the due process complaint, which has to be brought anew each school year. We also get to contest penancy. And the record seems to reflect that we did that for AC, YM, and EP in this case. Maybe the child is no longer attending the school. Perhaps they need different services or don't need certain services that they needed the year before. Or maybe the service can be provided at a public school when it couldn't have the year before. We always get the opportunity to contest penancy. And the services can differ dramatically student to student and year on year, which is another reason why even for the two students, I believe it's LN and KR, for whom we didn't contest penancy, we still need to see the uncontested penancy form, which becomes the operative document on which penancy is based to say, OK, they're getting these services. Then we do the documentation in the form of receipts of tuition to say they are actually getting these services and this is what they cost and we are paying that amount and no more. Under plaintiff's theory, they get to go to court even though in the case of AC, we didn't even get the penancy order, and this is on the record, until the 5th, which is the Wednesday after the Friday that they brought suit, the Wednesday after the Monday when they moved by order to show cause for injunctive relief. There's just problems with their claim that we are taking too long. When we need certain documentation, we get to contest penancy and this is the amount of time that it takes to get money from the government, which acts deliberately, has certain checks to prevent against corruption, to make sure that public monies are paid appropriately. It is just not the case here, there's really no serious dispute, that there's any harm flowing from the short wait here, which is expected for any government payment. And unless the panel has any further questions, I think our position is that you should affirm the sound exercise of discretion that under the circumstances here, an automatic injunction that goes any time, even when there's no threat to placement, even when documentation that DOE needs to conduct an appropriate review hasn't been provided, the district court soundly denied injunctive relief under the theory that an automatic injunction flows under those circumstances and where there's been no showing of a need for injunctive relief or intervention from this circuit at this stage in the litigation, which remains pending in the district court. This court should affirm. Thank you. Thank you. Mr. Albert, you have three minutes. Thank you. I'd like to clarify that each of the five students who are involved in this particular matter are 12-month students. In other words, extended school year because of the severity of their disabilities, that's the nature. They require that legally to, quote, prevent regression. With respect to whether or not these students, you know, are receiving certain services, that's what the impartial due process hearing is about. I've been an impartial hearing officer since, I think, 2002 or 2004, I don't recall. These hearings are usually bifurcated. At the beginning, there'll be an issue regarding pendency, and then there's a substantive part of the hearing. The impartial hearing regarding the pendency process, that's what that is designed for, to determine where is the student, what is the student receiving, what is the basis for pendency. In other words, it's typically based on a prior decision. For the most part, that's what pendency is. What was the last agreed upon program replacement? At that time, that is when the DOE or any school district can contest that saying, hey, this student doesn't receive those services anymore. Or somehow the student should be in a different program, or perhaps the student's not even in the same program. That opportunity was given, and that opportunity was either rejected or waived by the DOE in each of these cases. So to say that there might be some kind of diminution in services or something more sinister than that, that was not the case in any of these five students. In terms of the payment obligation, I just want to be clear. The payment obligation for the parent commences when they sign the enrollment agreement. It's held in abeyance during the proceedings. Once the proceedings are over, then the obligation either becomes one of the parent or of the district. In this case, the DOE. So to say somehow that the obligation is either shortened may be correct, but the DOE routinely fails to comply with these time frames. So again, perhaps as a legal issue, yes, it could be abbreviated. As a practical matter, it's not. I believe the court, and I know it's in our appellant brief and our reply brief, perhaps one of the more infamous cases, the LV case. This is a case where the DOE just simply doesn't comply with federal and state guidelines with respect to cases and the completion of cases. The idea that these cases can drag on and on, Congress sought to shorten that. There are very strict timelines. There's a 45-day timeline by which from the date of the due process complaint, there's then a 30-day period to try to resolve the case, and then an additional 45 day from that point to actually render a decision. I don't recall if in the last 20 years that's ever happened with the DOE and certainly not with these particular students. Thank you, counsel. We appreciate the arguments in the briefing on both sides. Mr. Albert, for stepping in last minute, the case will be taken under advisement. That concludes our calendar. All matters on today's calendar are hereby submitted, and I'll ask the court to please adjourn.